## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

COMBAT VETERANS MOTORCYCLE
ASSOCIATION,

            Plaintiff,

     v.

GEARLAUNCH, INC., THATCHER CLAFLIN
SPRING, AND DOES 1-10,

            Defendants.

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY DEMAND

Plaintiff, Combat Veterans Motorcycle Association ("CVMA"), for its complaint against Defendants, GearLaunch, Inc., Thatcher Claflin Spring, and Does 1-10 (collectively "Defendants"), states:

## Nature of the Case

1.      This is a civil action for direct and contributory copyright infringement arising under the copyright laws of the United States, 17 U.S.C. § 101 *et seq*.; for trademark counterfeiting, direct and contributory trademark infringement, and unfair competition and false designation of origin arising under the Lanham Act, 15 U.S.C. § 1051 *et seq*.; and for common law trademark infringement and unfair competition.

2.      By this action, CVMA seeks equitable and legal remedies for Defendants' repeated, persistent, and intentional counterfeiting and infringement of CVMA's intellectual property rights.

## Parties

3.     Plaintiff Combat Veterans Motorcycle Association is a nonprofit corporation organized and existing under the laws of the State of Missouri, with a principal place of business at 11 East Kansas Street, Liberty, Missouri 64048.

4.     Upon information and belief, Defendant GearLaunch, Inc. ("GearLaunch") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 5570 W. 1730 S, Salt Lake City, Utah 84104.

5.     Upon information and belief, Defendant Thatcher Claflin Spring ("Spring") is a resident of the State of California. Spring is the founder and chief executive officer of GearLaunch, and therefore, upon information and belief, directs and controls the activities of GearLaunch, including GearLaunch's policies, procedures, and compliance with intellectual property laws, and knowingly has authorized, directed, and/or participated in the infringing activities described herein.

6.     Upon information and belief, other potential parties related to, affiliated with, or otherwise participating in the infringing instrumentality complained of herein are purposefully obfuscating their identities such that they are not readily identifiable to CVMA. Thus, upon information and belief, the infringing activities alleged herein have been undertaken by unknown Doe defendants 1-10 individually and/or jointly, who have engaged in illicit activities described herein by their registration, ownership, operation, and/or authorization of, and/or profitability from the websites located at the domain names, www.online95.shop, www.styles99usa.monster, www.teepublicsk.com, www.deluxpoint.com, www.starcave.shop, www.peacock24shop.com, www.peacock24usa.com, www.teedelux.store, and www.amazinclothes.shop.

## Jurisdiction and Venue

7.     This Court has subject-matter jurisdiction over CVMA's federal Lanham Act and copyright claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

8.     This Court has subject-matter jurisdiction over CVMA's related claims arising under state law pursuant to 28 U.S.C. §§ 1338 and 1367.

9.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants engage in continuous and systematic business activities within the State of Missouri and this District, such as distributing, offering for sale, and selling goods that infringe CVMA's intellectual property within Missouri and this District; and/or regularly solicit business in Missouri and this District, deriving substantial revenue from interstate commerce, the State of Missouri, and this District; and/or have purposefully directed substantial activities at the residents of Missouri and this District by means of advertising and selling infringing products through websites further described herein; and/or have committed and directed its willful, tortious conduct described herein directed at persons located in Missouri and this District; and/or intended, knew, or reasonably should have known that their conduct would infringe CVMA's intellectual property rights, causing harm to CVMA, which is located in this District; and/or have otherwise made or established contacts with the State of Missouri sufficient to permit the exercise of personal jurisdiction.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims complained of herein occurred in this District and the intellectual property that is the subject of this action is owned by CVMA, who is situated in this District.

3

## Factual Background

### A. CVMA's Intellectual Property Rights

11.     CVMA is a registered 501(c)(19) veterans' charity comprised of members belonging to separate chapters formed across the nation and abroad, with a mission to support and protect veterans and provide assistance and charity to individual veterans, veteran care facilities, and other veteran organizations and registered charities.

12.     CVMA is the registered owner of the COMBAT VETS ASSOCIATION® (and Design) trademark, which is shown below and is the subject of U.S. Trademark Registration No. 2878643, filed April 3, 2003 and registered August 31, 2004, for "Indicating membership in a motorcyclists association consisting of combat veterans" in Class 200.



A true copy of the Certificate of Registration is attached as <u>Exhibit 1</u>, which provides prima facie evidence of CVMA's exclusive right to use the COMBAT VETS ASSOCIATION® (and Design) trademark, as reflected therein.

13.     CVMA is the registered trademark owner of the mark COMBAT VETERANS ASSOCIATION®, which is the subject of U.S. Trademark Registration No. 5797011, filed March 27, 2018 and registered July 9, 2019, for "Association services, namely, promoting the interests of motorcycle riding combat veterans" in Class 200. A true copy of the Certificate of

4

Registration is attached as <u>Exhibit 2</u>, which provides prima facie evidence of CVMA's exclusive right to use the COMBAT VETERANS ASSOCIATION® trademark, as reflected therein.

14.     CVMA is the registered trademark owner of the mark COMBAT VETS ASSOCIATION®, which is the subject of U.S. Trademark Registration No. 6085367, filed November 17, 2019 and registered June 23, 2020, for "Drinkware, namely, cups and mugs" in International Class 21, "Apparel, namely, shirts, sweatshirts, jackets, coats, hats and face masks" in International Class 25, and "Patches and belt buckles" in International Class 26. A true copy of the Certificate of Registration is attached as <u>Exhibit 3</u>, which provides prima facie evidence of CVMA's exclusive right to use the COMBAT VETS ASSOCIATION® trademark, as reflected therein.

15.     CVMA is the registered trademark owner of the Skully Design, which is shown below and is the subject of U.S. Trademark Registration No. 6151261, filed November 17, 2019 and registered September 15, 2020, for "Drinkware, namely, cups and mugs" in International Class 21, "Apparel, namely, shirts, sweatshirts, jackets, coats, hats and face masks" in International Class 25, "Patches and belt buckles" in International Class 26, and "indicating membership in a motorcycle club" in Class 200.



A true copy of the Certificate of Registration is attached as <u>Exhibit 4</u>, which provides prima facie evidence of CVMA's exclusive right to use the Skully Design trademark, as reflected therein.

16.     CVMA is the registered trademark owner of the mark AUXILIARY COMBAT VETS®, which is the subject of U.S. Trademark Registration No. 6436851, filed November 27, 2019 and registered August 3, 2021, for "Drinkware, namely, cups and mugs" in International Class 21, "Apparel, namely, shirts, sweatshirts, jackets, coats and hats" in International Class 25, "Ornamental cloth patches; Belt buckles" in International Class 26, and "Indicating membership in a motorcycle club" in Class 200. A true copy of the Certificate of Registration is attached as Exhibit 5, which provides prima facie evidence of CVMA's exclusive right to use the AUXILIARY COMBAT VETS® trademark, as reflected therein.

17.     CVMA is the registered trademark owner of the mark SUPPORTER COMBAT VETS®, which is the subject of U.S. Trademark Registration No. 6481462, filed November 27, 2019 and registered September 14, 2021, for "Drinkware, namely, cups and mugs" in International Class 21, "Apparel, namely, shirts, sweatshirts, jackets, coats and hats" in International Class 25, "Ornamental cloth patches; Belt buckles" in International Class 26, and "Indicating membership in a motorcycle club" in Class 200. A true copy of the Certificate of Registration is attached as Exhibit 6, which provides prima facie evidence of CVMA's exclusive right to use the SUPPORTER COMBAT VETS® trademark, as reflected therein.

18.     CVMA is the owner of trademark application U.S. Serial No. 97/423323, for the mark AUXILIARY COMBAT VETS and Design (shown below), filed on May 23, 2022 and claiming a date of first use at least as early as 2001, for "Drinkware, namely, cups and mugs" in International Class 21, "Apparel, namely, shirts, sweatshirts, jackets, coats and hats" in International Class 25, "Ornamental cloth patches; Belt buckles" in International Class 26, and "Indicating membership in a motorcycle club and association offering support to Veteran-related

causes on national and state levels." A true copy of the status pages from the U.S. Patent and Trademark Office's Trademark Status and Document Retrieval system is attached as <u>Exhibit 7</u>.



19.    CVMA is the owner of trademark application U.S. Serial No. 97/423326, for the mark SUPPORTER COMBAT VETS and Design (shown below), filed on May 23, 2022 and claiming a date of first use at least as early as 2001, for "Drinkware, namely, cups and mugs" in International Class 21, "Apparel, namely, shirts, sweatshirts, jackets, coats and hats" in International Class 25, "Ornamental cloth patches; Belt buckles" in International Class 26, and "Indicating membership in a motorcycle club and association offering support to Veteran-related causes on national and state levels." A true copy of the status pages from the U.S. Patent and Trademark Office's Trademark Status and Document Retrieval system is attached as <u>Exhibit 8</u>.



Collectively, CVMA's trademarks identified above may be referred to as the "CVMA Marks."

20.     CVMA is the registered copyright owner of the visual work of art titled, "Skully," which is shown below and is the subject of U.S. Copyright Registration No. VA0002304370, registered with the U.S. Copyright Office on May 18, 2022. A true copy of the Certificate of Registration for the copyrighted work, Skully, is attached as Exhibit 9.



Collectively, the trademarks and copyrighted work of CVMA may be referred to hereafter as "CVMA Intellectual Property."

21.     The CVMA Intellectual Property is an integral part of CVMA's branding and marketing in connection with its association, membership, and other charitable services.

22.     CVMA has continuously used the CVMA Marks in connection with (i) its membership organization since at least as early as 2002, (ii) apparel products, such as shirts, sweatshirts, and jackets, since at least as early as 2004, and (iii) drinkware products, such as cups and tumblers, since at least as early as 2008.

23.     CVMA prominently uses the CVMA Intellectual Property on CVMA's website, membership merchandise, print advertising, digital advertising, and social media outlets.

24.     Representative examples of CVMA's aforementioned use of the CVMA Intellectual Property are as follows:

8

CVMA's Website (https://www.combatvet.us/)



We are an Association of Combat Veterans from all branches of the United States Armed Forces who ride motorcycles as a hobby. As a registered 501(c)(19) veterans' charity, our mission is to support and protect those who have defended our country and our freedoms. Our focus is to provide assistance and help to individual veterans, veteran care facilities, other veteran organizations and registered charities. We sponsor and participate in many veteran-related motorcycle (and other) charity events each year, and as a non-profit organization, donate to various veteran causes.

9

CVMA Full Member Patch (https://www.cvmastore.net/item.php?i=PAFM04)



CVMA Full Member Sweatshirt (https://www.cvmastore.net/item.php?i=SWFM01BK)



CVMA Full Member Drinkware (https://www.cvmastore.net/item.php?i=WDFM01BK)



CVMA Auxiliary Member Hooded Sweatshirt
([https://www.cvmastore.net/item.php?i=ZHAM01BSG](https://www.cvmastore.net/item.php?i=ZHAM01BSG))



25.     CVMA's membership organization services, and products bearing the CVMA Intellectual Property, are offered to select groups and individuals who must qualify to participate as a CVMA member, auxiliary member, or supporter member.

26.     In addition to its continuous and prominent use of the CVMA Intellectual Property, CVMA licenses the rights to use the CVMA Intellectual Property to third parties for use in connection with authorized merchandising programs featuring a wide variety of goods, including without limitation, apparel and drinkware products.

27.     Through CVMA's rigorous licensing program, the licensed products bearing CVMA Intellectual Property, are permitted for distribution only among qualified CVMA

members, auxiliary members, or supporter members, with strict prohibitions against distribution to non-members.

28.     All licensed products are further subject to extensive quality control and supervision to ensure that officially licensed products bearing CVMA Intellectual Property are of the highest quality and thereby consistent with CVMA's own goods and services offered in connection with the CVMA Intellectual Property.

29.     CVMA has promoted, marketed, advertised, and used its CVMA Intellectual Property extensively, and has made substantial sales of products and services offered under, in connection with, and/or bearing the CVMA Intellectual Property.

30.     CVMA, on its own and through its members and licensees, has made exclusive use of CVMA's Intellectual Property for over two decades in connection with its goods and services, including among other things, on apparel and drinkware, which have been sold, displayed, used, and distributed nationwide among appropriate and authorized members and recipients.

31.     CVMA has expended substantial resources, engaged in extensive marketing, and vigorously enforced licensee compliance to develop and maintain the considerable goodwill it enjoys in the CVMA Intellectual Property and the valuable reputation associated therewith.

32.     As a result of CVMA's established presence among and service to charitable veteran organizations, together with its advertising and sales of products bearing the CVMA Intellectual Property, CVMA's Intellectual Property is recognized by consumers and the relevant purchasers as associated with CVMA, CVMA's charitable and membership association services, and CVMA's sought-after merchandise bearing the CVMA Intellectual Property.

14

## B. Defendants' Business and History of Infringing Activity

33.     Upon information and belief, Defendant GearLaunch was formed in 2013, founded by Defendant Spring, and headquartered in Salt Lake City, Utah.

34.     Defendants GearLaunch and Spring market GearLaunch as an ecommerce platform, providing tools and resources for online retailers to build scalable online businesses.

35.     Upon information and belief, Defendant GearLaunch offers a full-service platform wherein it operates numerous ecommerce websites that sell merchandise, such as apparel and drinkware, which incorporate its clients' uploaded designs.

36.     According to the GearLaunch website (www.gearlaunch.com), GearLaunch provides everything necessary to build and operate an online ecommerce business, including the manufacturing, printing, packaging, distribution, and payment processing of products purchased through online storefronts created by GearLaunch.

37.     GearLaunch further provides email marketing campaigns, easy-to-use analytics tools, and customer service for products offered and sold through GearLaunch-created websites.

38.     Upon information and belief, Defendants GearLaunch and Spring secure URLs for hosting online storefronts for its clients and provide the means for uploading unauthorized and counterfeit design images to be printed on a variety of consumer merchandise, such as apparel and drinkware products, which GearLaunch prints and distributes nationwide within a one- to two-day turnaround period.

39.     Under this business model, GearLaunch operates or has operated numerous websites, including but not limited to www.online95.shop, www.styles99usa.monster, www.teepublicsk.com, www.deluxpoint.com, www.starcave.shop, www.peacock24shop.com, www.peacock24usa.com, www.teedelux.store, and www.amazinclothes.shop, and on

15

information and belief an unknown amount of several others (collectively, "Counterfeiting Websites"), which appear to be operational for up to 36 hours before becoming disabled, and during which time are solely offering and selling counterfeit merchandise, including apparel and drinkware products, that incorporates CVMA Intellectual Property without authorization or license from CVMA (collectively, the "Counterfeiting Products").

40. Upon information and belief, Defendants GearLaunch and/or Spring have been made aware of its illicit business activities by CVMA and many others, who have brought the following lawsuits for trademark infringement, counterfeiting, unfair competition, and/or copyright infringement:

- *Indian Motorcycle International, LLC v. GearLaunch, Inc. and John Doe d/b/a NatureTee*, Case No. 0:16-cv-02095-WMW-SER (filed June 23, 2016, D. Minn.), alleging counterfeiting, trademark infringement, unfair competition, dilution, and deceptive and unlawful trade practices;

- *H-D USA LLC and Harley-Davidson Motor Company Group, LLC v. GearLaunch, Inc., d/b/a Gear Harley, TeeKiwi, TeeFuny, TeeSeason, TeeShop4U Company a/k/a Biker's Corner, and Tee Dig, and John Does*, Case No. 16-cv-1167 (filed August 30, 2016, E.D. Wis.), alleging trademark counterfeiting, trademark infringement, trademark dilution, cybersquatting, copyright infringement, and unfair competition;

- *Hamilton Uptown Limited Liability Company and Creative Goods Merchandise LLC v. Sunfrog, LLC, Josh Kent, GearLaunch Inc., Michael Schell, Thatcher Claflin Spring, Doe #1 (d/b/a TopUSAShirts.com), Doe #2 (d/b/a TeeUpdate.com), Doe #3 (d/b/a tees4urteam.com), Doe #4 (d/b/a*

16

sonmazing.com), Doe #5 (d/b/a teenava.com), and Does 6-10, Case No. 1:16 cv-07834-PGG (filed October 6, 2016, S.D.N.Y.), alleging copyright infringement, trademark infringement and unfair competition, and dilution;

- *Bravado International Group Merchandising Services, Inc. and Zion Rootswear, LLC v. GearLaunch Inc., Michael Schell, Thatcher Claflin Spring, Barrett Summerlin, Sunfrog, LLC, Merchpond Manufacturing LLC, Josh Kent, The Dream Junction, LLC and Blair Dorsey*, Case No. 2:16-cv-08657-MWF-JEM (filed November 21, 2016, C.D. Cal.), alleging trademark infringement, right of publicity violations, and unfair competition;

- *The Regents of the University of California, et al. v. GearLaunch, Inc. and Thatcher Claflin Spring*, Case No. 4:17-cv-02280-DMR (filed April 24, 2017, N.D. Cal.), alleging counterfeiting, direct and contributory trademark infringement, direct and contributory unfair competition, false representations, and false designation of origin, and direct and contributory trademark dilution;

- *Hold This, Inc. v. GearLaunch and Doe 1 d/b/a DLS-Store.com*, Case No. 1:18-cv-01386 (filed April 1, 2018, N.D. Ga.), alleging trademark infringement and copyright infringement;

- *Tim Okamura v. GearLaunch, Inc., Thatcher Claflin Spring, Tee Eco, Barrett Summerlin, and Does 1 through 25*, Case No. 2:18-cv-05101-VAP-AFM (filed June 8, 2018, C.D. Cal.), alleging copyright infringement, violation of the Visual Artists Rights Act of 1990, and unfair competition;

- *Mast-Jaegermeister SE v. GearLaunch, Inc., Thatcher Claflin Spring, Doe #1 (d/b/a piperexpress.com), Doe #2 (d/b/a recallstore.com), Doe #3 (d/b/a*

17

*customsales.co), Doe #4 (d/b/a wonderworldstore.com), and Doe #5 (d/b/a hobby-boss.com)*, Case No. 1:18-cv-06276 (filed July 11, 2018, S.D.N.Y.), alleging counterfeiting, direct and contributory trademark infringement, direct and contributory unfair competition and false designation of origin, and dilution;

- *Monster Energy Company v. GearLaunch, Inc.*, Case No. 5:18-cv-01489-FMO-KK (filed July 13, 2018, C.D. Cal.), alleging trademark counterfeiting, trademark and trade dress infringement, false designation of origin, trademark dilution, copyright infringement, and unfair competition;

- *Sanrio Co., Ltd. and Sanrio, Inc. v. GearLaunch, Inc., Thatcher Claflin Spring, Does 1 through 10*, Case No. 2:19-cv-00916-RGK-AGR (filed February 6, 2019, C.D. Cal.), alleging direct, contributory, and vicarious copyright infringement, direct contributory, and vicarious trademark infringement, and unfair competition and false advertising; and

- *White River Marine Group, L.L.C. and Bass Pro Intellectual Property, L.L.C. v. GearLaunch, Inc. and Thatcher Claflin Springer*, Case No. 6:22-cv-03103-BCW (filed April 22, 2022, W.D. Mo.), alleging counterfeiting, trademark infringement, unfair competition, false representation, and false designation of origin, and trademark dilution.

41. Given the number of lawsuits brought against Defendants GearLaunch and Spring for their persistent counterfeiting and infringing activities described herein, there is a clear history of illicit and remorseless violations of third-party intellectual property rights through a sham business grounded in palming off the goodwill and valuable reputations of established brands' intellectual property, including CVMA Intellectual Property, as further alleged herein.

18

## C. Defendants' Willful Violation of CVMA's Intellectual Property Rights

42.     On or around May 11, 2022, CVMA first became aware of Defendants' infringing operations and activities through the online storefront www.teepublicsk.com, advertising and offering for sale several products, including apparel and drinkware products, all of which prominently displayed CVMA's signature logo and member patch design—the registered COMBAT VETS ASSOCIATION and Design trademark—without authorization or license from CVMA, further noting that the Counterfeiting Products would be available for purchase until May 12, 2022, a period of time thought to be too short to effectively report the infringement through available means, such as a complaint pursuant to the Digital Millennium Copyright Act ("DMCA"). A true copy of a preserved screenshot from the www.teepublicsk.com website is attached as Exhibit 10.

43.     On or around June 7, 2022, CVMA learned of a new counterfeiting website run by GearLaunch, www.peacock24shop.com, and immediately sent GearLaunch a cease-and-desist letter, notifying GearLaunch of the CVMA Intellectual Property and demanding that all sales of Counterfeiting Products be immediately discontinued. A true copy of correspondence sent to GearLaunch on June 7, 2022, is attached as Exhibit 11.

44.     Although the Counterfeiting Products were promoted as being available only for the next 6 hours—until June 8 (see Exhibit 11, pages 11-15)—GearLaunch responded on June 8, 2022, advising that the Counterfeiting Products would be removed from the www.peacock24shop.com website.

45.     Shortly thereafter, on or around August 3, 2022, CVMA became aware of a new online storefront which solely offered Counterfeiting Products, www.starcave.shop, powered by GearLaunch, and sent another cease-and-desist letter to GearLaunch, expressly noting the

documented history of repeated infringement of the CVMA Intellectual Property via identical marks and designs displayed on products being sold through websites operated by GearLaunch. A true copy of correspondence sent to GearLaunch on August 3, 2022, is attached as Exhibit 12.

46. Again, www.starcave.shop promoted Counterfeiting Products, only available until August 4, 2022, and was believed to be shortly disabled as indicated therein, without further response from GearLaunch.

47. The following day, on August 5, 2022, CVMA became aware of yet another GearLaunch-created online storefront at www.amazinclothes.shop, and sent a third cease-and-desist letter to GearLaunch demanding the takedown of Counterfeiting Products. A true copy of correspondence sent to GearLaunch on August 5, 2022, is attached as Exhibit 13.

48. While GearLaunch removed the Counterfeiting Products from the www.amazinclothes.shop website, it continues to launch websites solely designed to promote and offer for sale Counterfeiting Products that infringe the CVMA Intellectual Property.

49. For example, on or around August 18, 2022, and between October 14, 2022 and October 25, 2022, GearLaunch websites were created using the domain names www.teedelux.store, www.deluxpoint.com, www.styles99usa.monster, and www.online95.shop, to promote and sell Counterfeiting Products that prominently feature CVMA's Intellectual Property, all of which confirm in the footer that the websites are powered by GearLaunch. True copies of preserved screenshots from www.teedelux.store, www.deluxpoint.com, www.styles99usa.monster, and www.online95.shop are attached as Exhibit 14, Exhibit 15, Exhibit 16, and Exhibit 17, respectively.

50. Each of the Class 21 and Class 25 Counterfeiting Products offered and sold through GearLaunch-created online stores bear spurious designations of the CVMA Intellectual

20

Property that are identical to or indistinguishable from CVMA's Intellectual Property, and thus, are counterfeiting.

| **Representative Examples of Counterfeiting Products bearing CVMA Intellectual Property on Counterfeiting Websites:** |
|---|
| <br>From www.teepublicsk.com; Preserved on May 11, 2022; See Exhibit 10 |
| <br>From www.peacock24shop.com; Preserved on June 7, 2022; See Exhibit 11 |



From www.starcave.shop; Preserved on August 3, 2022; See Exhibit 12



From www.amazinclothes.shop; Preserved on August 5, 2022; See Exhibit 13



From www.teedelux.store; Preserved on August 18, 2022; See Exhibit 14



From www.deluxpoint.com; Preserved on October 14, 2022; See Exhibit 15



From www.styles99usa.monster; Preserved on October 24, 2022; See Exhibit 16



From www.online95.shop; Preserved on October 25, 2022; See Exhibit 17

23

51.     The Counterfeiting Products bear designs, color schemes, and trademarks that are identical to, nearly identical to, and/or substantially similar to the CVMA Intellectual Property, and therefore, are confusingly similar to one or more of CVMA's Marks.

52.     Defendants have a reputation for selling products of poor quality and providing poor-quality customer service, inferior to the high-quality goods and services offered by CVMA and CVMA's licensees under the CVMA Marks.

53.     The Counterfeiting Goods have been and/or are currently offered for sale and sold on numerous e-commerce websites that are owned, operated, controlled, registered by, and/or otherwise affiliated with Defendants GearLaunch and Spring, as indicated on the Counterfeiting Websites, each of which include the words "Powered by GearLaunch" and provide a customer service email of legal@gearlaunch.com or hello@gearlaunch.com at the bottom of the webpage (see Exhibits 10-16), and further direct users to contact GearLaunch customer service for support with orders made through the Counterfeiting Websites.

54.     Upon information and belief, Defendants GearLaunch and Spring may unilaterally remove content from those websites, and maintain discretion over the designs displayed, advertised, sold, and/or offered for sale through the websites it operates and the designs it prints on products it manufactures, packages, and distributes as part of its business platform and activities.

55.     As a result of Defendants' promotion, offering, sale, manufacture, and distribution of Counterfeiting Products, both current and past, that use identical, nearly identical, and/or substantially indistinguishable imitations of CVMA Intellectual Property, consumers are likely to be confused such that consumers will erroneously believe the Defendants are affiliated,

connected, or associated with, or in some way related to, CVMA and the goods and services offered under the CVMA Mark.

56. Upon information and belief, Defendants are aware of the CVMA Intellectual Property and their infringing activities by using the same without authorization, at a minimum, by virtue of the several notices of infringement sent to Defendants from CVMA; but willfully continue to engage in operating online storefronts that advertise, offer, and sell Counterfeiting Products and continue to manufacture, package, and distribute the Counterfeiting Products sold through those websites, all of which infringe CVMA's Intellectual Property.

57. The aforementioned illicit and infringing activities of Defendants have been directed at consumers nationwide, including those located in Missouri and this District.

58. Defendants' misappropriation of CVMA Intellectual Property and the resulting likelihood of consumer confusion and deception has caused and is causing irreparable harm to CVMA's reputation and goodwill, particularly given the lack of quality and poor customer service perceived or experienced by the public in connection with the Counterfeiting Websites and Counterfeiting Products.

59. Defendants' continued violation of CVMA's intellectual property rights is and has been in bad faith, with malicious intent, and with blatant and intentional disregard to CVMA's proprietary rights and the CVMA Intellectual Property.

60. Defendants' illicit and infringing activities complained of herein are an extension of Defendants' pattern of disrespect towards the intellectual property rights of others.

61. Upon information and belief, Defendants have generated profits through the misappropriation of CVMA's Intellectual Property, to which they are not entitled.

25

62.     Upon information and belief, as CEO, Defendant Spring directs and controls GearLaunch's relentless counterfeiting and infringing operations, thereby having a direct financial interest in permitting, encouraging, and overseeing, and continuing the counterfeiting and infringing activities of GearLaunch.

63.     As a result of the several notices of infringement sent to GearLaunch from CVMA, Defendant Spring had knowledge or reason to know of the infringing activities, and continued to direct and contribute to GearLaunch's ongoing counterfeiting and infringing operations, thereby knowingly authorizing, directing, controlling, and/or substantially participating in the promotion, manufacture, distribution, offer for sale, and/or sale of Counterfeiting Products through GearLaunch's operation of Counterfeiting Websites.

## Count I – Federal Trademark Counterfeiting
## 15 U.S.C. § 1114

64.     CVMA realleges and incorporates by reference the averments of all preceding paragraphs, as if fully set forth in this paragraph.

65.     Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the CVMA Marks on goods covered by CVMA's trademark registrations, including apparel products and drinkware.

66.     Defendants have intentionally and willfully used these spurious designations, without authorization, knowing they are counterfeit in connection with the advertising, offering, sale, manufacture, and distribution of Counterfeiting Products, in a manner likely to cause confusion or mistake, or to deceive consumers as to the source or origin of Defendants' Counterfeiting Products.

67.     Defendants' unauthorized use of the CVMA Marks is likely to cause the public to believe that Defendants' goods and services are the same as CVMA's goods and services, and/or

that Defendants are authorized, sponsored, or approved by CVMA, or otherwise affiliated, connected, or associated with or in some way related to CVMA, which is not true.

68.     As a result of Defendants' unauthorized use of the CVMA Marks, Defendants are unfairly benefiting and profiting from CVMA's highly regarded reputation and goodwill established through CVMA's use of the CVMA Marks

69.     Defendants' actions complained of herein are to the substantial and irreparable injury to the public, CVMA, and CVMA's Marks, and the substantial goodwill represented thereby.

70.     Defendants' actions demonstrate an intentional, willful, and malicious intent to counterfeit the federally registered CVMA Marks for private financial gain.

71.     Defendants' unauthorized use of the federally registered CVMA Marks constitutes trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. §§ 1114 and 1116(d).

72.     Defendants' counterfeiting activities have continued subsequent to CVMA's notice of infringement of the CVMA Marks, demonstrating an intentional, willful, and malicious intent to counterfeit the federally registered CVMA Marks and making this an exceptional case.

73.     Defendants' counterfeiting conduct entitles CVMA to injunctive relief, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees, or, at CVMA's election, statutory damages of up to $2,000,000 per counterfeit mark per type of goods and/or services advertised, sold, and/or offered for sale, pursuant to 15 U.S.C. § 1117.

## Count II – Trademark Infringement
### 15 U.S.C. § 1114

74.     CVMA realleges and incorporates by reference the averments of all preceding paragraphs as if set forth fully in this paragraph.

27

75.     CVMA owns all right, title, and interest in the registered CVMA Marks.

76.     CVMA has used each of the registered CVMA Marks continuously in commerce since at least early as 2008, with many uses dating back to 2001.

77.     Defendants' use in commerce of one or more of the registered CVMA Marks infringes CVMA's rights in its registered marks, in violation of 15 U.S.C. § 1114 because it renders Defendants' Counterfeiting Products confusingly similar to goods and services CVMA and its licensees offer under the registered CVMA Marks.

78.     Defendants' unauthorized use of one or more of the registered CVMA Marks creates the erroneous impression in consumers' minds that Defendants' Counterfeiting Products have been manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with CVMA and the CVMA Marks.

79.     Defendants' use in commerce of one or more of the registered CVMA Marks has caused irreparable injury to CVMA by, *inter alia*, destroying consumers' unique association of the CVMA Marks with CVMA and/or its licensees, and engendering confusion in the marketplace.

80.     CVMA has no adequate remedy at law for Defendants' misconduct.

81.     Unless Defendants are enjoined and restrained from continuing their infringement, consumers will continue to be confused and CVMA's injuries will continue to occur.

82.     CVMA is entitled to recover three times its actual damages, as well as Defendants' gains, profits, and advantages as a result of Defendants' infringement, in an amount to be proven at trial.

83.     Defendants' intentional and willful misconduct renders this an exceptional case, entitling CVMA to attorney's fees and to treble damages, statutory damages, and interest, pursuant to 15 U.S.C. § 1117(b) & (c).

## Count III – Unfair Competition and False Designation of Origin
## 15 U.S.C. § 1125(a)

84.     CVMA realleges and incorporates by reference the averments of all preceding paragraphs as if set forth fully in this paragraph.

85.     CVMA owns all right, title, and interest in the CVMA Marks, each of which it has used continuously in commerce in connection with apparel products and drinkware since at least as early as 2008, with many uses dating back to 2001.

86.     Defendants' use in commerce of one or more of the CVMA Marks infringes CVMA's intellectual property rights in its trademarks because it renders Defendants' Counterfeiting Products confusingly similar to goods and services CVMA and its licensees offer under the CVMA Marks.

87.     Defendants' unauthorized use of one or more of the CVMA Marks creates the erroneous impression in consumers' minds that Defendants' Counterfeiting Products have been manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with CVMA and the CVMA Marks, constituting unfair competition and a false designation of origin within the meaning of 15 U.S.C. § 1125(a).

88.     Defendants' use in commerce of one or more of the CVMA Marks has caused irreparable injury to CVMA by, *inter alia*, destroying consumers' unique association of the CVMA Marks with CVMA and/or its licensees, and engendering confusion in the marketplace.

89.     CVMA has no adequate remedy at law for Defendants' misconduct.

29

90.     Unless Defendants are enjoined and restrained from continuing their infringement, consumers will continue to be confused and CVMA's injuries will continue to occur.

91.     CVMA is entitled to recover three times its actual damages, as well as Defendants' gains, profits, and advantages as a result of Defendants' infringement, in an amount to be proven at trial.

92.     Defendants' intentional and willful misconduct renders this an exceptional case, entitling CVMA to attorney's fees and to treble damages, statutory damages, and interest, pursuant to 15 U.S.C. § 1117(b) & (c).

## Count IV – Contributory Trademark Infringement
### (As to Defendants GearLaunch and Spring)

93.     CVMA realleges and incorporates by reference the averments of all preceding paragraphs as if set forth fully in this paragraph.

94.     Defendants are engaging in illegal conduct, including without limitation, the promotion, advertisement, offer for sale, manufacture, sale, and distribution of the Counterfeiting Products in violation of the Lanham Act.

95.     Defendants GearLaunch and Spring have actual knowledge of the illegal activities from, at a minimum, written notice of infringement sent to GearLaunch by CVMA.

96.     With blatant disregard to CVMA's written notice and rights in the CVMA Marks, Defendants GearLaunch and Spring have continued to materially encourage, enable, and contribute to the counterfeiting and infringing activities by, among other things, providing a platform for the Counterfeiting Websites wherein the Counterfeiting Products are displayed, promoted, offered for sale, and sold, facilitating communications by and between the sellers of

Counterfeiting Products and their consumers, accepting payment for the Counterfeiting Products, and manufacturing, printing, packaging, and distributing the Counterfeiting Products.

97. Defendants GearLaunch and Spring are therefore contributorily liable for the counterfeiting and infringing activities alleged in this Complaint, in violation of the Lanham Act and the common law.

98. CVMA has no adequate remedy at law for the contributory trademark infringement of Defendants GearLaunch and Spring, and has suffered irreparable harm as a result of the contributory counterfeiting and infringing conduct of the Defendants.

99. As a result of the Defendants' wrongful contributory conduct, CVMA has been damaged in an amount not as yet determined or ascertainable. At a minimum, however, CVMA is entitled to injunctive relief, an accounting of Defendants' profits, actual damages, punitive damages, attorney's fees, the costs of this action, and any and all other relief authorized by law.

**Count V – Copyright Infringement**
**17 U.S.C. § 501**

100. CVMA realleges and incorporates by reference the averments of all preceding paragraphs as if set forth fully in this paragraph.

101. CVMA owns all right, title, and interest in the valid U.S. Copyright Registration No. VA0002304370, for the Skully graphic work of art ("Skully Design").

102. CVMA has complied in all respects with the provisions of the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and all other laws governing copyright to secure the exclusive rights and privileges in and to its registered copyright in the Skully Design.

103. Defendants' Counterfeiting Products use and feature a design that is identical, strikingly similar, or at least substantially similar to the protectable elements of the Skully Design.

31

104.     Defendants have infringed CVMA's copyright rights by copying the Skully Design and by using, displaying, advertising, promoting, offering for sale, and selling Defendants' Counterfeiting Products through the Counterfeiting Websites.

105.     The copying of the Skully Design and the use, display, advertising, promotion, offer for sale, and sale of Defendants' Counterfeiting Products has resulted in damage to CVMA and continues to damage CVMA, including but not limited to lost product sales and the loss of licensing revenue.

106.     Defendants have profited from and received a direct financial interest from the infringement by selling Defendants' Counterfeiting Products.

107.     Because Defendants have directly copied the Skully Design, knew of their infringement, and/or acted with reckless disregard for or willful blindness to CVMA's copyright rights, Defendants' infringement has been willful.

108.     Pursuant to 17 U.S.C. § 502, CVMA is entitled to an order enjoining Defendants from further unauthorized use, copying, reproduction, display, marketing, or sale of products bearing the Skully Design.

109.     Pursuant to 17 U.S.C. § 503(a) & (b), CVMA is entitled to an order impounding all Defendants' Counterfeiting Products.

110.     Pursuant to 17 U.S.C. § 504, CVMA is also entitled to recover actual damages and any profits of Defendants, or an award of statutory damages up to $150,000 per registered work.

111.     Pursuant to 17 U.S.C. § 505, CVMA is entitled to an award of attorneys' fees and costs.

## Count VI – Contributory Copyright Infringement
### (As to Defendants GearLaunch and Spring)

112.     CVMA realleges and incorporates by reference the averments of all preceding paragraphs as if set forth fully in this paragraph.

113.     Defendants GearLaunch and Spring supply the advertising space for Counterfeiting Products, and further manufacture, sell, accept payment for, and distribute each of the Counterfeiting Products sold through the Counterfeiting Websites for a share in the profit.

114.     Defendants GearLaunch and Spring have actual knowledge of the illegal acts of the Counterfeiting Websites from, at a minimum, repeated written notice from CVMA, which Defendants GearLaunch and Spring deliberately disregarded or consciously avoided in their decision to continue securing, creating, and operating Counterfeiting Websites.

115.     Through the continued presence of emerging Counterfeiting Websites, Defendants GearLaunch and Spring have knowingly and willfully permitted and continue to permit the Counterfeiting Websites to promote, offer for sale, and sell Counterfeiting Products bearing CVMA Intellectual Property, which are manufactured, packaged, and distributed by GearLaunch, to fulfill orders submitted through the Counterfeiting Websites.

116.     Defendants GearLaunch and Spring have therefore materially encouraged, enabled, and contributed to the counterfeiting and infringing activities of the Counterfeiting Websites, which may or may not be commissioned by Does 1-10.

117.     CVMA has sustained and will continue to sustain damage to their exclusive rights in the Skully Design, including but not limited to lost product sales and the loss of licensing revenue.

118.     As a result of the Defendants' wrongful contributory conduct, CVMA has been damaged in an amount not as yet determined or ascertainable. At a minimum, however, CVMA

33

is entitled to injunctive relief, an accounting of Defendants' profits, actual damages, punitive damages, attorney's fees, the costs of this action, and any and all other relief authorized by law.

## Count VII – Trademark Infringement and Unfair Competition
## Missouri Common Law

119.    CVMA realleges and incorporates by reference the averments of all preceding paragraphs as if set forth fully in this paragraph.

120.    CVMA owns common law trademark rights in the CVMA Marks and has priority rights in and to the CVMA Marks that date back to at least as early as 2001.

121.    CVMA and its licensees have used the CVMA Marks continuously and consistently for an extended period of time to identify, advertise, promote, sell, and provide a wide variety of goods and services, including without limitation, use of the marks on and in connection with apparel, drinkware products, stickers, patches, belt buckles, magnets, headwear, motorcycle accessories, flags, pins, keychains, signs, baggage, coins, canopies, and license plates, which has indelibly impressed on the minds of the consuming public the impression that the CVMA Marks identify CVMA and its licensees as the source of goods and services offered in connection with the CVMA Marks.

122.    Defendants unauthorized use of the CVMA Marks began long after CVMA and its licensees first began using the CVMA Marks in connection with, among other things, apparel and drinkware products.

123.    Defendants' acts have created, and unless restrained by this Court, will continue to create, a likelihood of confusion and deception of the consuming public, causing irreparable injury to CVMA for which CVMA has no adequate remedy at law.

124.    Defendants' conduct constitutes trademark infringement and unfair competition under the common law of Missouri by a deliberate course of conduct, all without authorization, license, privilege, or justification.

125.    Upon information and belief, Defendants have acted with full knowledge of CVMA's rights in and use of the CVMA Marks, and without regard to the likelihood of confusion and deception of the public created by Defendants' activities.

126.    Defendants' conduct demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with CVMA and its licensees, to the substantial and irreparable injury of CVMA.

127.    As a result of Defendants' acts, CVMA has been damaged and will continue to be damaged in an amount not as yet determined or ascertainable. At a minimum, however, CVMA is entitled to injunctive relief, an accounting of Defendants' profits, actual damages, punitive damages, attorneys' fees and costs, and any and all other relief authorized by law.

## Prayer for Relief

Based on the foregoing, CVMA requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including without limitation, the following:

1.    Preliminarily and permanently enjoin and restrain Defendants, and their officers, directors, agents, dealers, representatives, servants, and employees, and all others acting in concert with Defendants, from:

    a.    Manufacturing, distributing, advertising, marketing, offering for sale, or selling the Counterfeiting Products or any other goods bearing the CVMA Intellectual Property or confusingly similar imitations thereof;

b. Using the CVMA Marks, or any confusingly similar iteration thereof, in any manner on or in connection with consumer products;

c. Using any trademark, name, logo, design, or source designation of any kind on or in connection with goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of the CVMA Intellectual Property;

d. Using any trademark, name, logo, design, or source designation of any kind on or in connection with goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by CVMA, or are sponsored, authorized, or endorsed by CVMA, or are in any manner connected to or related to CVMA;

e. Passing off, palming off, or assisting in passing off or palming off goods as those of CVMA, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

f. Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this Paragraph 1;

2. Direct Defendants to file with this Court and serve on CVMA's counsel within thirty (30) days after the service on Defendants of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

3. Order Defendants to cease offering for sale, marketing, promoting, and selling, and to recall all products sold under or bearing any of CVMA's Intellectual Property, or

confusingly similar iterations thereof, which are in Defendants' possession or authority to recall, and to deliver to each such customer from which products are recalled a copy of this Court's Order regarding the same;

4.      Order Defendants to destroy, and certify the destruction of, all infringing and counterfeiting products and materials in Defendants' possession, custody, or under their control, pursuant to 15 U.S.C. § 1118;

5.      Order Defendants to provide CVMA with an accounting of any and all profits derived by Defendants from the sale or distribution of Counterfeiting Products;

6.      Award CVMA Defendants' profits resulting from the acts of counterfeiting and infringement alleged in this Complaint in order to redress Defendants' unjust enrichment and to deter their infringement of the CVMA Mark, pursuant to 15 U.S.C. § 1117(a)(1);

7.      Award CVMA any damages sustained and the costs of this action, pursuant to 15 U.S.C. § 1117(a)(2);

8.      Triple any damages and increase any profits awarded to the amount this Court finds just, pursuant to 15 U.S.C. § 1117(b);

9.      Award CVMA its attorneys' fees pursuant to 15 U.S.C. § 1117(b), as well as pre- and post-judgment interest;

10.     Award CVMA, should CVMA so elect, an award of statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 for each counterfeit mark for each good and service Defendants have willfully counterfeited and infringed;

11.     Award CVMA its damages, together with prejudgment interest, for the lost sales, loss of goodwill, and other damages suffered by CVMA as a result of the acts of trademark

infringement and unfair competition by Defendants, pursuant to the laws of the State of Missouri; and

12. Grant to CVMA such further relief as may be equitable and proper.

## **Jury Demand**

CVMA demands a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: October 27, 2022

s/ ***C. Blair Barbieri***
C. Blair Barbieri, MO State Bar No. 67941
 bbarbieri@hoveywilliams.com
Scott R. Brown, MO State Bar No. 51733
 sbrown@hoveywilliams.com
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210
(913) 647-9050   Fax: (913) 647-9057

ATTORNEYS FOR PLAINTIFF

38